**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Charles Ray King,**

       **Plaintiff,**          **Civil Action No. 11-11895**

      vs.                      **District Judge David M. Lawson**

**Detroit Diesel Corporation,**    **Magistrate Judge Mona K. Majzoub**
**et al.,**

       **Defendants.**
_____/

**Report and Recommendation**

Plaintiff Charles Ray King is suing is former employer, Defendant Detroit Diesel, and his former union, UAW Local 163, for their alleged failure to ensure that certain health insurance benefits caps were removed from collective bargaining agreements, to which Plaintiff was subject. This suit is best characterized as a hybrid §301/breach of the duty of fair representation claim, and the Court will treat the claim as such.[1] Plaintiff also alleges conspiracy and race discrimination claims. Before the Court are Defendant Detroit Diesel Corporation and Defendant UAW Local

---

[1] "[A]n employee may bring suit against both the employer and the union[. . . .] Such a suit . . . comprises two causes of action. The suit against the employer rests on § 301 [of the Labor Management Relations Act, 29 U.S.C. § 185], since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act[, 29 U.S.C. § 151]." *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (citations omitted). "The suit is thus not a straightforward breach of contract suit under § 301 . . . but a hybrid § 301/fair representation claim[.]" *Id.* at 165 (citations omitted) (and holding that a hybrid suit is governed by a six-month limitations period). "[D]uty-of-fair representation claims are allegations of unfair, arbitrary, or discriminatory treatment of workers by unions-as are virtually all unfair labor practice charges made by workers against unions." *DelCostello*, *Id.* at 170.

163's individual motions for judgment on the pleadings. The Court has been referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 2.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[2]

**I.     Recommendation**

Because the Court finds that Plaintiff failed to bring his hybrid § 301/ breach of the duty of fair representation claim within the required six-month limitation period, the Court recommends granting Defendants' motions for judgment on Plaintiff's federal claim. Because the Court recommends dismissing the federal claim, it also recommends declining supplemental jurisdiction over any state law claims that Plaintiff may have raised and therefore dismissing this case.

**II.    Report**

   **A.    Facts**[3]

Plaintiff has filed this case against his former employer, Detroit Diesel, and his former union, Local 163.[4] The substance of his loosely-pleaded complaint is that Detroit Diesel and Local 163 conspired against and were possibly discriminatory towards a certain set of employees, those that

---

[2]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

[3]Defendants point to *Wood v. Detroit Diesel Corp.*, 607 F.3d 427 (6th Cir. 2010) to shed light on the factual background of Plaintiff's complaint. That case dealt with the exact cap agreements that are at issue here. There, the Sixth Circuit held that the cap agreements were valid against a challenge against the caps' applicability to the 1993-2004 retirees.

[4]Plaintiff states that Detroit Diesel designs and manufactures diesel engines. (Am. Compl. at 1.) Local 163 is a section of the International Union, United Automobile, Aerospace, Agriculture Workers of American–a union that represents the production and maintenance personnel whom Detroit Diesel employs. (*Id.*)

were to, or did, retire between 1993-2004.[5] Plaintiff alleges that Defendants created cap agreements to the health insurance benefits that the governing collective bargaining agreement provided. Plaintiff states that the cap agreements' effect was to make the 1993-2004 retirees have to pay for their health insurance costs above a certain amount.[6] (Am. Compl. at 1.)

Plaintiff states that Detroit Diesel defends its policy by stating that it formed an agreement between it and, presumably, Plaintiff's union, Local 163. (Am. Compl. at 1.) Plaintiff states he never knew about the agreement. (*Id.*) Plaintiff further states that, while his group of retirees has to pay these insurance benefits, Detroit Diesel is paying full benefits, without any caps, for those retirees who retired at any other time after thirty years. (*Id.*)

Plaintiff alleges that Local 163 "failed to make sure the cap agreement was properly removed, or [it] made an agreement with [Detroit Diesel] that [it] would remain only upon certain retirees." (Am. Compl. at 2.) Plaintiff argues that Local 163's failure to remove the cap agreement is discrimination against those retirees who retired between 1993 and 2004. (*Id.*)

Plaintiff maintains that Detroit Diesel and Local 163's failure shows a "conspiracy to discriminate" because both parties knew that the failure to remove the cap agreement would "promote discrimination and even more corporate greed on the backs of these retirees." (Am. Compl. at 2.) Plaintiff adds that only Detroit Diesel and Local 163 knew the ramifications of not explicitly removing the cap agreements. (*Id.*)

---

[5]Although Plaintiff does not explicitly state that he retired in this time period, the Court infers that he did from the pleadings and the filing of this case.

[6]CBAs put into effect in 1993, 1994, 1998, and 2004 governed Plaintiff's employment.

Plaintiff maintains that Detroit Diesel and Local 163 concealed the cap issue from the union members. (Am. Compl. at 2.) Plaintiff alleges that Defendants revealed "[v]ery little or nothing" to the union members about the cap issue, "so the [union members] had no way of knowing the caps were still in place[.]" (*Id.*)

Plaintiff summarizes his position, "both Detroit Diesel and [] Local 163[] knowingly conspired to discriminate against these [1993-2004 retirees.] [Detroit Diesel and Local 163] were well aware that Detroit Diesel would use [the cap agreement] to discriminate against these retirees and their families to boost its profits and bottom line." (Am. Compl. at 3.) Plaintiff adds that Defendants' actions also contain an element of racial discrimination–for 1993 to 2004 "probably [] was the period when the largest number of African Americans retired from this company." (*Id.*)

### B. Rule 12(c) judgment on the pleadings standard

"Motions seeking judgment on the pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c), are reviewed under the same standard applied to motions to dismiss brought pursuant to Rule 12(b)(6). *Estate of Malloy v. PNC Bank*, 11-12922, 2012 WL 1094344, at *4 (E.D.Mich. Apr. 2, 2012) (Edmunds, J.) (citation omitted). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. See *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See*

*also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

On a motion to dismiss, both documents attached to pleadings and documents referenced in the pleadings may be considered without converting the motion into a motion for summary judgment. *Estate of Malloy*, 2012 WL 1094344, at *5 (citations omitted).

5

**C.     Analysis**

**1.     Plaintiff has failed to file suit within the six-month limitations period**

Plaintiff has alleged a claim against both his former employer, Detroit Diesel, and his union, Local 163, for their failure make sure that cap agreements in the governing collective bargaining agreement did not apply to Plaintiff, and those in his position. (Am. Compl. at 1.) He alleges that Defendants acted in a conspiratory manner and discriminated against him. (*Id*.) He also makes a reference to a race discrimination claim. (See Am. Compl. at 3, "probably this was the period when the largest number of African Americans retired from this company.") Because Plaintiff has asserted a claim against his employer and his union, his claim is a hybrid § 301/duty of fair representation claim. *Garrish v. UAW*, 417 F.3d 590, 594 (6th Cir. 2005) *cert. den.* 546 U.S. 1094 (2006) (citation omitted) ("A hybrid § 301 suit implicates the interrelationship amount a union member, his union, and his employer.").

Both Detroit Diesel and Local 163 have moved for judgment on the pleadings against Plaintiff's § 301/duty of fair representation claim. (Dkt. 20, 22.) Both motions raise one issue–whether Plaintiff's claim is barred by the hybrid § 301/duty of fair representation six-month limitations period. *See Garrish*, 417 F.3d at 594 (citation omitted) ("A six-month statute of limitations applies to [a plaintiff's] hybrid § 301 action.").

The six-month limitations periods begins "when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Garrish*, 417 F.3d at 594 (citation omitted). Although the "determination of the accrual date is an objective one: 'the asserted knowledge of the plaintiffs is not determinative if they did not act as reasonable persons

and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue.'" *Id.* (citation omitted).

Here, while there are arguments for various points at which the limitations period could begin, all of the points would have a triggered a limitations period that expired well before Plaintiff filed this lawsuit.

Detroit Diesel argues that Plaintiff has filed this case years after the 1993, 1994, 1998, and 2004 CBAs that Plaintiff alleges violated his rights. (Detroit Diesel's Mot. at 3.) Detroit Diesel also argues that Plaintiff also filed suit years after the 2005 *Wood* class action and more than six months after the Sixth Circuit definitively ruled on the *Wood* litigation. (*Id.*)

Here, given Sixth Circuit precedent, the Court finds that a reasonable person should have become aware of the cap agreements when the cap agreements took effect. For Plaintiff to have not been precluded from brining his hybrid claim, he would have had to file his claim within six months of at least the last CBA, which was in 2004.

*Ratkosky v. United Transportation Union*, 843 F.2d 869 (6th Cir. 1988) is helpful. In *Ratkosky*, the Sixth Circuit addressed a duty of fair representation claim under the Railway Labor Act. 843 F.2d at 876.[7] The Sixth Circuit discussed the point at which the plaintiffs' claim accrued. *Id.* There, the plaintiffs were seeking damages and a change in their seniority rights from their employer and they also alleged a breach of the duty of fair representation against their union. *Id.* The plaintiffs added a conspiracy claim against both their employer and union, alleging that the defendants conspired to deprive the plaintiffs of their employment rights. *Id.* There, a federal law

---

[7]In *Rotkosky,* The Sixth Circuit noted that the same limitations period applied to both the Railway Labor Act and the Labor Management Relations Act. 843 F.2d at 873.

7

mandated the employer and union to negotiate certain seniority rights for the employees. *Id.* at 871. The employer and union therefore negotiated a collective bargaining agreement in 1975, which went into effect on April 1, 1976. *Id.* In 1981, a dispute arose among some employees over the seniority rights, and those employees complained to their union, requesting it to "renegotiate the seniority system established under the collective bargaining agreement with [the employer.]" *Id.* at 872. The union refused the request. *Id.* Three years later, in July, 1984, the plaintiffs filed suit in federal court against both their employer and the union. *Id.* Against the union, the plaintiffs alleged a breach of the duty of fair representation, for the union's failure to renegotiate the seniority rights. *Id.* And against both the union and the employer, the plaintiffs alleged conspiracy. *Id.* The district court granted summary judgment against the plaintiffs, finding that they did not bring their claims within the six months limitations period. *Id.* The Sixth Circuit affirmed, holding that the limitations period began the day the seniority system went into effect. *Id.* at 873. The Sixth Circuit rejected the plaintiffs' argument that the limitations period began when their union failed to renegotiate the collective bargaining agreement. *Id.*

This case supports the holding that Plaintiff should have brought his claims when the cap agreements went into effect. Because he did not do so, the Court finds that his claims are barred. At least one case in this district also supports the holding that Plaintiff should have known of the breach when the CBAs went into effect and that he would have had to bring suit within six months of that date. *See Merritt v. International Ass'n of Machinists and Aerospace Workers*, 06-14342, 2008 WL 5784439, at *8 (E.D.Mich. Sept. 22, 2008) (Komives, Mag. J.) ("In general, with respect to [duty of fair representation] claims based on a contract, the plaintiff knows or should know of the union's breach, and thus the limitation period beings to run, on the date that the contract is signed

8

or ratified."). *See also Overstreet v. Mack Indus., Inc.*, 260 F. App'x 883, 886 (6th Cir. 2008) ("[A] union member is generally responsible for knowing the contents of his collective bargaining agreement.") (citation omitted).

Plaintiff is therefore barred from bringing a hybrid §301/breach of the duty of fair representation claim against Detroit Diesel and Local 163.

### 2. Plaintiff has not pleaded sufficient facts to support a fraudulent concealment claim that would toll the limitations period

To the extent that Plaintiff argues that the statute of limitations should be tolled due to Detroit Diesel and Local 163's fraudulent concealment, the Court rejects that argument.[8] "The doctrine of fraudulent concealment allows equitable tolling of the statute of limitations where 1) the defendant concealed the underlying conduct, 2) the plaintiff was prevented from discovering the cause of action by that concealment, and 3) the plaintiff exercised due diligence to discover the cause of action." *Huntsman v. Perry Local Sch. Bd. of Educ.*, 379 F. App'x 456, 461 (6th Cir. 2010) (citation omitted).

Here, because the Court has found that Plaintiff should have discovered his cause of action well before he filed suit, the Court finds that he cannot take advantage of the equitable tolling doctrine.

### 3. Even if the Court were to find that the state law claims were not preempted, the Court would still recommend declining supplemental jurisdiction over Plaintiff's state claims

Both Detroit Diesel and Local 163 argue that any state law claims of conspiracy or race

---

[8]Plaintiff has not pleaded the elements of fraudulent concealment. But in one of his responses, Plaintiff alleges that Detroit Diesel and Local 163 are hiding "things" from the union members, that the members need to know the truth, and that the defendants fear that "things" may be exposed. (Dkt. 24, Pl.'s Resp. at 1.)

9

discrimination that Plaintiff alleges are preempted.[9] While the Court acknowledges the strength of that argument, Detroit Diesel and Local 163 have not thoroughly addressed those claims. But the Court still recommends declining to exercise supplemental jurisdiction over the state law claims

---

[9] Section 301 preempts any state law claim that "substantially implicate[s] the meaning of collective bargaining agreement terms." *Clark v. Sodexho, Inc.*, 11-25285, 2012 WL 511539, at *2 (E.D.Mich. Feb. 16, 2012) (Ludington, J.) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)).

"To determine whether a state-law claim is sufficiently 'independent' to survive § 301 preemption, this court has adopted a two-step inquiry. First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails *either* of these two requirements, it is preempted by § 301." *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004) (citations omitted).

"In order to make the first determination, the court is not bound by the 'well-pleaded complaint,' rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort. If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement. Moreover, neither a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (citations omitted).

Here, the Court would be likely to recommend that Plaintiff's conspiracy and discrimination claims were preempted by his hybrid § 301 claim. *See Blessing v. Untied Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Industrial*, 244 F. App'x 614, 622 (6th Cir. 2007) (upholding that the district court's dismissal of the plaintiff's civil conspiracy claim because that claim was preempted by the Labor Management Relations Act because the conspiracy claim would "necessarily entail[] interpretation of the terms of the collective bargaining agreement and, in fact, [was] essentially duplicative of plaintiffs' hybrid § 301 claims."). *See also Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 860 (6th Cir. 1988) (holding that a sex discrimination claim against a union was a claim of the union's failure to fairly and adequately represent a member, and therefore preempted by federal law.). But there is some doubt as to the discrimination claim. *See Ivery v. Chrysler Corp.*, 31 F. App'x 841, 844 (6th Cir. 2002) ("[Sixth Circuit precedent] clearly indicates that a state-created antidiscrimination tort claim is independent from the terms set forth in a CBA unless an element of the state tort is necessarily determined by an interpretation of the CBA."). But because neither defendant thoroughly addressed the discrimination issue, the Court chooses to recommend declining supplemental jurisdiction over the state law claims.

pursuant to 28 U.S.C. § 1367(c)(3), given that Plaintiff's federal claim no longer exists in this case. *See Crutcher v. General Elec. Co.*, 10-007334, 2011 WL 1527760, at *6 (W.D.Ky. Apr. 19, 2011) (after finding that the plaintiff's hybrid § 301/duty of fair representation claim was barred by the limitations periods, the court declined to exercise supplemental jurisdiction over the remaining state law claims.); *McFarland v. Air Eng'g Metal Trades Council*, 05-1018, 2007 WL 2300363, at *4 (E.D.Tenn. Aug. 7. 2007) (dismissing the plaintiff's hybrid § 301 claim and then declining to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367(c)(3)).

### D.     Conclusion

For the above-stated reasons, the Court recommends granting Detroit Diesel and Local 163's motion with respect to the federal §301 hybrid/breach of the duty of fair representation claim. The Court further recommends declining to exercise supplemental jurisdiction over the remaining state law claims and therefore dismissing this case.

### III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: May 7, 2012          s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Charles Ray King and Counsel of Record on this date.

Dated:   May 7, 2012        s/ Lisa C. Bartlett
                            Case Manager