UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES RAY KING,

                    Plaintiff,                    Case Number 11-11895
                                                               Honorable David M. Lawson
v.                                                  Magistrate Mona K. Majzoub

DETROIT DIESEL CORPORATION and UAW
LOCAL 163,

                    Defendants.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS, AND DISMISSING COMPLAINT

This case is before the Court on objections by the defendants to a report filed by Magistrate

Judge Mona K. Majzoub recommending that their own motions for judgment on the pleadings be

granted. The plaintiff, who is acting *pro se*, is a former employee of defendant Detroit Diesel and

a former member of defendant Local 163 of the United Auto Workers. The plaintiff's complaint

alleges that the defendants engaged in a conspiracy to discriminate against individuals who retired

between 1993 and 2004 by imposing caps on the health insurance payments made in favor of those

retirees. The complaint suggests that the discrimination may have been racially motivated. The case

was referred to the magistrate judge to conduct all pretrial matters, after which the defendants filed

their motions. Magistrate Judge Majzoub construed the plaintiff's complaint as raising a hybrid

claim under § 301 of the Labor Management Relations Act (which necessarily includes a claim of

breach of the duty of fair representation against the defendant union) and state law claims of

conspiracy and race discrimination. Her report recommends that the Court dismiss the hybrid claim

as time-barred and decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

The plaintiff filed no objections to the recommendation, but the defendants want all the claims dismissed with prejudice. The Court finds that the magistrate judge's recommendation is correct and appropriate, and therefore will adopt it.

I.

The facts of the case are set forth by the magistrate judge and need not be repeated here. The defendants also note that the case parallels the controversy in *Wood v. Detroit Diesel*, 607 F.3d 427 (6th Cir. 2010). The gravamen of the plaintiff's complaint is that the defendants conspired to discriminate, potentially on a racial basis, against workers who retired between 1993 and 2004 by entering into a collective bargaining agreement (CBA) that caps health care payments to those retirees. It is not clear what state law claim the plaintiff intends to invoke, but to the extent that the plaintiff is attempting to state a claim for racial discrimination, his claim would fall under the Michigan Elliot-Larsen Civil Rights Act (ELCRA).

The defendants do not object, for obvious reasons, to the portion of the magistrate judge's report recommending that the plaintiff's hybrid claim be dismissed. The defendants object, however, to the magistrate judge's recommendation that the Court decline supplemental jurisdiction over the plaintiff's state law claims, arguing that the Court instead should find that the plaintiff's state law claims are preempted and dismiss them or, in the alternative, exercise supplemental jurisdiction over the state law claims and dismiss them as time-barred.

The defendants first argue that the plaintiff's state law claims are preempted by section 301 preemption of the Labor Management Relations Act, the National Labor Relations Act, the duty of fair representation. Citing *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216-218 (6th Cir. 1994), *Mattis v. Massman*, 355 F.3d 902, 904-907 (6th Cir. 2004), and *Maynard v. Revere Copper*

-2-

*Products, Inc.*, 773 F.2d 733, 735 (6th Cir. 1985), they argue that any state law claim that implicates CBAs is preempted by section 301. The defendants point to *In re Glass Molders*, 983 F.2d 725 (6th Cir. 1993), in which the Sixth Circuit held that it was clear error for a district court to remand to the state court a plaintiff's state law claims after dismissing the plaintiff's duty of fair representation claim as time-barred. The defendants argue that if a state law claim requires that a court interpret, apply, or "delve into" a CBA or a CBA-governed relationship, the claim should be dismissed as preempted. The defendants argue that unfair labor practices during bargaining are subject to the exclusive jurisdiction of the National Labor Relations Board, and that to the extent the plaintiff's conspiracy and discrimination claims allege bargaining misconduct, they are preempted under 29 U.S.C. §§ 157, 158 and *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Finally, the defendants argue that the plaintiff's state law claims are preempted because they arise from the duty of fair representation.

Second, the defendants argue that if the Court find that the plaintiff's state law claims are not preempted, it should retain supplemental jurisdiction and dismiss the plaintiff's claims as time-barred. They believe that the allegation in the plaintiff's complaint that the period between 1993 and 2004 was "probably" the time when the most African-Americans retired is insufficient to support a claim of race discrimination. However, the defendants argue, even if it were sufficient, the discrimination occurred in 2004 and thus the plaintiff's claim is barred by the three-year statute of limitations governing claims under the Elliott-Larsen Civil Rights Act. Further, the defendants contend, civil conspiracy claims are subject to the limitations period governing the underlying conduct. The defendants state that the allegedly discriminatory caps were apparent in 2004, more than three years before the plaintiff brought his suit.

-3-

Finally, the defendants contend that complete dismissal would serve judicial economy by avoiding further proceedings and the need for a state court to address federal preemption issues already discussed by the magistrate judge.

Objections to a report and recommendation are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The parties' failure to file objections to the report and recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion. *Thomas v. Arn*, 474 U.S. 140, 149 (1985). The plaintiff did not object to the magistrate judge's recommendation that his hybrid claim be dismissed. The Court agrees with the magistrate judge that the claim is time-barred.

The state law claims are another matter. Of course, if they are preempted, the Court can say so and dispose of them. The Court is not obliged to do that, however, *see* 28 U.S.C. § 1367(c); it may chose simply not to address them. The case the defendants cite arguing the contrary, *In re Glass Molders*, 983 F.2d 725 (6th Cir. 1993), addressed the propriety of *remanding* state law claims that were preempted. The present case was not removed from state court, and therefore no remand can occur.

More directly to the point, the Court does not believe that the state law claims are preempted by federal law. Read generously, the plaintiff's complaint raises a claim for civil conspiracy and

a claim under the Elliott-Larson Civil Rights Act. Neither of those claims here falls within the ambit of the LMRA.

The Labor Management Relations Act governs "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a); *see Brittingham v. General Motors Corp.*, 526 F.3d 272 (6th Cir. 2008). And "[c]omplete preemption occurs in cases that fall within the scope of the LMRA." *Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 515 (6th Cir. 2003) (citing *Miller v. Norfolk and Western Ry. Co.*, 834 F.2d 556, 564 (6th Cir. 1987)). However,

> "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." It is only "when resolution of a state-law claim is *substantially* dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that [the] claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law."

*Brittingham*, 526 F.3d at 278 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 220 (1985) (emphasis added)). The *Brittingham* court explained the rationale behind federal preemption of state law claims relating to collective bargaining agreements as founded on the necessity of having nationally uniform "labor-law principles" govern such disputes. *Ibid.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988)).

In light of this precedent, the Sixth Circuit has formulated a two-step approach for determining whether such claims survive section 301 preemption. "'First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms.'" *Ibid.* (quoting *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)). In undertaking that examination, courts must determine "whether the plaintiff can prove all the elements of her claim without contract interpretation." *Ibid.* "[N]either a tangential relationship

-5-

to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *DeCoe*, 32 F.3d at 216. "The second step requires a court to 'ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law.'" *Brittingham*, 526 F.3d at 278 (quoting *DeCoe*, 32 F.3d at 216). "[I]f a state law claim fails *either* of these two requirements, it is preempted by § 301." *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004).

The plaintiff's civil rights claim requires neither. To succeed on a claim of racial discrimination under Michigan's ELCRA, as with a claim under Title VII, a plaintiff "must either 'present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment.'" *Curry v. SBC Communications, Inc.*, 669 F. Supp. 2d 805, 824 (E.D. Mich. 2009) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)). The plaintiff's claim, essentially, is that the defendants implemented a series of cap agreements and then removed it for post-2004 retirees in the 2004 CBA with the intent to discriminate based on race. There would be no need to interpret the CBA to determine that claim.

The plaintiff's allegations of a conspiracy to discriminate based on race clearly implicate a right created by state law, rather than a right created by the CBA. *See Brittingham*, 526 F.3d at 278. The right to be free from racial discrimination is embodied in Michigan's ELCRA. The question is whether the plaintiff's claim requires the interpretation of terms in the CBA. That claim could be proven, at least in theory, without interpreting the CBA. For example, if discovery were to uncover a recording of a meeting between union leaders in which they discussed their plan to restrict African-American retirees' benefits through cap agreements governing retirees between 1993 and

2004, that could constitute direct evidence of discrimination that would support the plaintiff's claim without interpretation of the CBA.

Sixth Circuit precedent suggests that such claims are not subject to § 301 preemption.  In *O'Shea v. Detroit News*, 887 F.2d 683 (6th Cir. 1989), the Sixth Circuit held that a plaintiff's claim under the Michigan Handicappers' Civil Rights Act that he had been transferred to an undesirable duty because of his age was not preempted by § 301, because "the right not to be discriminated against in employment decisions based on handicap or age is independent of the question" of whether a particular adverse action constitutes a demotion under a CBA.  *Id*. at 687.  The court noted: "[t]he point is that Michigan employees have the right not to be discriminated against on the basis of age or handicap without regard to the collective bargaining agreement's language about an employee's rights."  *Ibid*.  In *Smolarek v. Chrysler Corp.*, 879 F.2d 1326 (6th Cir. 1989), the Court found that claims of retaliatory discharge and handicap discrimination were not preempted under § 301.  *Id*. at 1335.  The court found that those claims would not necessitate the interpretation of a collective bargaining agreement.  *Ibid*.

Finally, in *Ivery v. Chrysler Corp.*, 31 F. App'x 841 (6th Cir. 2002), the Sixth Circuit examined claims that the plaintiffs were not admitted to a training program because of their race. *Id*. at 842.  The training program was created by the CBA, as were the criteria and process for admission, and the defendants argued that in order to demonstrate that the CBA permitted discrimination or that it was incorrectly followed, the plaintiffs would need to advance an interpretation of the CBA.  *Id*. at 842, 845.  The court stated that the defendants were "not entirely incorrect" but held that the plaintiffs' claims were not preempted.  *Id*. at 845.  The court noted that "the central question is not whether some reference to the CBA must be made, but whether or not

-7-

some element of the state cause of action necessarily requires an interpretation of the CBA." *Ibid*. The court reasoned that "a state-created antidiscrimination tort claim is independent from the terms set forth in a CBA unless an element of the state tort is necessarily determined by an interpretation of the CBA. . . . The actions and intent of the employer are the key issues. As *O'Shea* pointed out, whether or not Defendants complied with the terms of the contract is utterly irrelevant." *Ibid*.

In this case, the question is whether the implementation of the cap agreements was racially discriminatory. Whether or not those cap agreements violated the CBA is entirely irrelevant. In fact, the defendants do not specify any provisions of the CBA that would require interpretation. Instead, the defendants make the blanket statement that any state law claim that "implicates" a CBA is preempted, and reason from there that because there is a CBA involved in this case, the plaintiff's state law claims must be preempted. That is an incorrect statement of the law, as *Ivery* clearly demonstrates.

Nor do the cases cited by the defendants compel a different result. In *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir. 1994), the Sixth Circuit found a plaintiff's defamation claim based on a coworker's allegation of sexual harassment barred because the determination of whether the allegation was a unprivileged publication to a third party, an element of that state law claim, turned on whether the CBA imposed a duty to report sexual harassment and resolve such claims. *Id*. at 217. Similarly, the court found that the plaintiff's claim for intentional infliction of emotional distress was preempted because the determination of whether the conduct was outrageous turned out whether the sexual harassment claims were authorized under the CBA. *Id*. at 220; *see also Mattis v. Massman*, 355 F.3d 902, 908 (6th Cir. 2004) (same). Finally, the court found that the plaintiff's tortious interference with a business relationship was preempted because "the business relationship

-8-

the plaintiff claims was damaged was created entirely by the CBA." *Id*. at 218.  In contrast, here, the defendants have pointed to no element of the plaintiff's race discrimination or conspiracy claims that would require interpretation of the CBA.

Many of the other cases cited by the defendants for the purpose of arguing section 301 preemption actually discuss preemption based on the duty of fair representation.  "Under the doctrine of fair representation, the union, as an exclusive agent of the employees, is obliged to 'serve the interests of all its members without hostility or discrimination toward any . . . .'" *Emswiler v. CSX Transp., Inc.*, --- F.3d ----, No. 11-3517, 2012 WL 2948522, at *10 (6th Cir. July 20, 2012) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).  Some Sixth Circuit cases suggest that the plaintiff's claim may be preempted on this basis.  In *Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733 (6th Cir. 1985), the Sixth Circuit held that a plaintiff's claim under the Handicapper's Act was preempted by the federal duty of fair representation.  *Id*. at 735.  In that case, the court found that the plaintiff's claim was based on a section of the Handicapper's Act barring labor organizations from failing "to fairly and adequately represent a member in a grievance process because of a member's handicap."  *Ibid*. (quoting Mich. Comp. Laws § 37.1204(d)).  The court found that this provision "created no new rights for an employee and imposed no duty on a union not already clearly present under existing federal labor law."  *Ibid*.  The court stated that "[t]he duty of fair representation relates to an area of labor law which has been so fully occupied by Congress as to foreclose state regulation." *Ibid*.  This case is distinguishable, however, because the plaintiff appears to be resting on the general duty not to discriminate based on race, rather than on some specific provision creating a duty analogous to the duty of fair representation.

The Court believes this case is most closely analogous to *Ivery v. Chrysler Corp.*, 31 F. App'x 841 (6th Cir. 2002). The plaintiffs in that case brought a hybrid action against both their employer and their union. As to the plaintiffs' claims against their union, the court stated that "[i]nsofar as Plaintiffs' charges were asserted against the UAW based on the duty of fair representation set forth in the CBA, those claims are obviously preempted." *Id*. at 846. However, the court found that the plaintiff's charges were based instead on "a duty pursuant to the Elliott-Larson Civil Rights Act." *Ibid*. Similarly, here, the plaintiff's claims are not explicitly based on a duty in the CBA; instead, the plaintiff appears to be alleging that the defendants violated a separate duty under the ELCRA. Based on the Sixth Circuit's decisions in *Smolarek*, *O'Shea*, and *Ivery*, the Court finds that federal preemption would not preclude the plaintiff's claims of race discrimination under the ELCRA and conspiracy.

The defendants also advance the argument that the plaintiff's claims are preempted under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). "As a general rule, federal courts do not have jurisdiction over activity which is 'arguably subject to § 7 or § 8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) (quoting *Garmon*, 359 U.S. at 245) (alteration in original). The question here, of course, is whether the plaintiff's claims fall within the scope of the statutes, which set out the type of conduct that constitutes unfair labor practices.

Section 7 of the NLRA states:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an

-10-

agreement requiring membership in a labor organization as a condition of employment.

29 U.S.C. § 157.

Section 8 of the NLRA deals with "unfair labor practices" by both employers and labor organizations. Subsection (a) covers "[u]nfair labor practices by employer[s]," and subsection (b) covers "[u]nfair labor practices by labor organization[s]." Subsection (a) provides, in relevant part:

It shall be an unfair labor practice for an employer--

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it . . . ;
(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ;
(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;
(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

29 U.S.C. § 158(a).

Subsection (b) provides:

It shall be an unlawful labor practice for a labor organization or its agents--

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title . . . ; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;
(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;
(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title;

-11-

(4) (i) to engage in, or to induce or encourage any individual employed by any person employed in commerce or in an industry affecting commerce to engage in, a strike or [secondary boycott] . . . ; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is [forcing employers to join a union or sign representation agreements; forcing secondary boycotts; forcing employers to bargain with a different union than the one already certified; forcing employers to assign work to workers represented by a union other than the one already recognized by the employer];

(5) to require of employees covered by an agreement authorized under subsection (a)(3) of this section [to make excessive or discriminatory] payment, as a condition precedent to becoming a member of such organization ...;

(6) to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed; and

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees . . . .

29 U.S.C. § 158(b).

Consistent with the language of section 8(a), Sixth Circuit cases dealing with unfair labor practices on the part of employers involve allegations of employers refusing to hire union members, *N.L.R.B. v. Beacon Elec. Co.*, No. 07-2254, 2012 WL 1560439, at *1 (6th Cir. May 4, 2012), refusing to recognize or bargain with a union, *Brentwood at Hobart v. N.L.R.B.*, 675 F.3d 999, 1001 (6th Cir. 2012), firing workers because of their support for a union and participation in a strike, *N.L.R.B. v. Jackson Hosp. Corp.*, 557 F.3d 301, 304 (6th Cir. 2009), or prohibiting employees from discussing unionization or threatening employees with discipline for supporting unionization, *N.L.R.B. v. Consolidated Biscuit Co.*, 301 F. App'x 411, 433 (6th Cir. 2008). Supreme Court cases applying section 8 to employer activity deal with similar conduct. *See, e.g.*, *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 536 (2002) (holding that an employer's unsuccessful retaliatory lawsuit

-12-

against a union was not an unfair labor practice unless the suit was objectively baseless); *Auciello Iron Works, Inc. v. N.L.R.B.*, 517 U.S. 781, 783 (1996) (holding that an employer that disavows a CBA based on a good-faith doubt about the union's majority status commits an unfair labor practice where the facts forming the basis of the doubt were known to the employer prior to the CBA's acceptance by the union); *Lechmere, Inc. v. N.L.R.B.*, 502 U.S. 527, 541 (1992) (holding that an employer did not commit an unfair labor practice by barring nonemployee union organizers from its property where organizers otherwise had access to employees).

Similarly, Sixth Circuit cases dealing with unfair labor practices on the part of unions under section 8(b) involve allegations of unions threatening workers who file charges with the NLRB, *N.L.R.B. v. Construction and General Laborers' Union Local No. 534*, 778 F.2d 284, 290-92 (6th Cir. 1985), maintaining local unions segregated by gender and denying women employees the ability to join the men's union, *N.L.R.B. v. Local No. 106*, 520 F.2d 693, 694 (6th Cir. 1975), deterring workers from withdrawing from unions, *Lee v. N.L.R.B.*, 325 F.3d 749, 754-57 (6th Cir. 2003), engaging in illegal secondary boycotts, *F.A. Wilhelm Constr. Co., Inc. v. Kentucky State Dist. Council of Carpenters, AFL-CIO*, 293 F.3d 935, 938 (6th Cir. 2002), and intimidating non-union members, *District 30, United Mine Workers of America v. N.L.R.B.*, 819 F.2d 651, 653-55 (6th Cir. 1987).  Supreme Court cases applying section 8 to union activity involve the same sorts of conduct. *See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Const. Trades Council*, 485 U.S. 568 (1988) (holding union's distribution of handbills urging customers to not shop at mall until owner agreed to use union labor to not constitute an unfair labor practice); *N.L.R.B. v. Int'l Brotherhood of Elec. Workers, Local 340*, 481 U.S. 573 (1987) (holding union's policy of fining members who worked for employers not part of a CBA with the union to not constitute an unfair

-13-

labor practice); *Pattern-Makers League of N. America, AFL-CIO v. N.L.R.B.*, 473 U.S. 95 (1985) (affirming NLRB decision finding union to have engaged in unfair labor practice by fining members who resigned during a strike and returned to work).

A plaintiff need not intend to state a claim of unfair labor practice in order to come within the exclusive jurisdiction of the NLRB.  However, the essence of the complaint must involve some sort of interference with or coercion involving the right to organize and bargain collectively to fall within section 7 or 8 of the NLRA.  *Loftis*, 342 F.3d at 515 (stating that "[t]he essence of an unfair labor practice under Section 8(a) is an employer's unfair treatment of an employee because of the employer's anti-union animus").

The nature of the claims in this case are much different than the types of actions set out above.  There is no suggestion in the complaint that either of the defendants interfered with, defamed, or discriminated against the plaintiff for the purpose of coercing union participation, engaging in secondary boycotts, refusing to bargain in good faith with the union, or otherwise undermining the industrial peace that the NLRA was designed to preserve.  The defendants' argument that *Garmon* preemption applies to these claims therefore also fails.

That brings us to the question whether the Court ought to entertain those claims at all. Federal courts have jurisdiction over state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A court also has discretion to "decline to exercise supplemental jurisdiction."  28 U.S.C. § 1367(c).  "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'"  *Gamel v. City of*

-14-

*Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996); *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction").

Judicial economy does not favor retaining jurisdiction over the plaintiff's state law claims in this case. The Sixth Circuit has stated that appellate courts "scrutinize[] closely" the decision to retain supplemental jurisdiction after federal claims are dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Musson Theatrical, Inc.*, 89 F.3d at 1255. "After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Ibid.* This presumption can only be overcome in "unusual circumstances," such as when prejudice would result from relitigating the claim in the state court. *Ibid.* No such unusual circumstances exist in this case. The case has not been extensively litigated in this Court. The case was referred to a magistrate judge and the defendants' motions for judgment on the pleadings apparently were decided without a hearing. There has been no discovery. The complaint was read expansively, as required, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but it is not entirely clear that the plaintiff intended to raise claims under the Elliott-Larson Civil Rights Act. Sorting through the state law issues would not be a wise application of federal judicial resources.

The Court agrees with the magistrate judge to the extent that she recommends declining jurisdiction over the plaintiff's state law claims. The defendants' objections lack merit.

-15-

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #34] is **ADOPTED**, and the defendants' objections [dkt. #35] are **OVERRULED**.

It is further **ORDERED** that the defendants' motions for judgment on the pleadings [dkt. #20, 22] are **GRANTED**.

It is further **ORDERED** that claims in the complaint brought under section 301 of the Labor Management Relations Act are **DISMISSED WITH PREJUDICE**, and the state law claim in the complaint are **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 27, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 27, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL

-16-